## TRANSACTION BETWEEN HUSBAND AND WIFE.

Circuit Court of Cuyahoga County.

### The Cleveland Dredge & Dock Co. v. Margaret K. Smith et al.*

Decided, June 7, 1909.

*Promissory Note—Endorsee in Due Course, But Without Considera-tion, May Recover—Husband and Wife—General Rules of Confi-dential Relationship Apply—No Presumption of Fraud.*

1. Payment of a note at maturity to the payee thereof, without re-quiring a surrender and cancellation of the note, will not pre-vent recovery on the note by an endorsee in due course, although no consideration for the transfer of the note to the endorsee ap-pears.

2. Although in transactions between husband and wife, their con-duct towards each other is to be scrutinized in the light of the general rules which control the actions of persons occupying confidential relations to each other, that does not warrant a charge that the relationship of husband and wife is such as to afford every facility for fraud.

*Kline, Tolles & Morely,* for plaintiff in error.
*H. H. Johnson* and *H. L. Peeke,* contra.

Winch, J.; Henry, J., and Marvin, J., concur.

In the original action in the common pleas court Margaret K. Smith recovered on three promissory notes executed and de-livered by plaintiff in error in April, 1905, to her husband, L. P. Smith, and by him endorsed to her; these notes were renewals of three several notes of like amounts executed and delivered by said company to said L. P. Smith in April, 1904, which like-wise bear an endorsement to the wife. The company admitted the execution and delivery to L. P. Smith of the notes sued upon, but claimed payment to him of the full amount therefor by the issue to him of stock of the company, and alleged that he neg-

---

* Affirmed without opinion, *Cleveland Dredge & Dock Co.* v. *Smith,* 84 Ohio State, 482.

lected to deliver the notes to the company and endorsed them to his wife after maturity; that the wife paid no consideration for the notes and at the time of receiving them was fully advised of their payment.

Errors in ruling on evidence are alleged to have occurred on the trial. We have examined all the exceptions called to our attention, but we find no errors in that respect prejudicial to the rights of the plaintiff in error.

Errors in the instructions of the court are claimed which require an examination of the evidence upon which the judgment rests, for the court, in effect, charged that there was no evidence that the notes were transferred to Mrs. Smith after their maturity or that at the time of receiving them she was advised of their payment.

In the state of the pleadings, the notes bearing the endorsement mentioned, the court might as well have directed a verdict for the plaintiff.

Yet the whole record, which is voluminous, shows an effort on the part of the defendant to prove the truth of the allegations of its answer, by circumstantial evidence. After shutting Mrs. Smith's mouth as to the real consideration passing from her to her husband for these notes, by invoking the rule as to transactions between husband and wife, the time spent in trying to prove that Mrs. Smith paid her husband nothing for the notes, we think, was wasted. He had a right to give the notes to his wife, for the record shows him individually solvent at the time the company executed the original notes, though the company may not have been solvent. We have found no authorities sustaining the broad claim of counsel for plaintiff in error that where no consideration passes between the payee and endorsee in due course of a negotiable note, payment at maturity to the payee will prevent recovery by the endorsee. Such a rule would jeopardize the value of many of the securities held by educational and charitable institutions.

What then are the circumstances in this case that tend to overcome the presumption arising from the possession of these notes by Mrs. Smith, properly endorsed, that such endorsement was made to her prior to the maturity of the notes?

L. P. Smith was president of the company, Margaret K. Smith was his wife, and she owned one share of stock in the company and was a director in it until these notes matured.   She had like connection with a Lorain company which was merged with this company at the time the notes are said to have been paid; she consented to this merger.   She had notice that a meeting of the company was called for the purpose of increasing the capital stock of the company, buying the Lorain company, changing the name of the company and the transaction of such other business as might come before such meeting, and she expressly agreed to the increase of stock.

This meeting was held on the very day the last note matured, but she was not present at it.   At the meeting a scheme for financing the company was agreed upon which required her husband to take stock for his claims against the company, which appear to have largely exceeded the amount of these notes, and provided that the creditors of the company should turn in their claims against the company, accept in lieu thereof individual notes of L. P. Smith and his brother, secured by their stock in the company, ''and upon such exchange being effected the notes, claims and demands against said companies   *   *   *   should be canceled and surrendered to said company.''

L. P. Smith signed this agreement, both as a creditor and as one of the parties agreeing to carry it out.   Margaret K. Smith and two other creditors did not sign the agreement.   L. P. Smith did not advise the company that the notes had been assigned to his wife and everybody else connected with the transaction supposed he still owned the notes.   The books of the company show his personal account charged with the payment of the interest on the notes until their renewal.   The renewal was to him instead of to his wife.   The company has paid the notes once to the husband and says that the claim of the wife is a scheme arranged between her and her husband to defraud it, and that she should not have the assistance of the courts to this end.

Whatever bad faith is chargeable to L. P. Smith in this transaction, are we to impute to his wife, because of their relationship only?   Is she not to be presumed an honest woman until the

contrary is shown? There is nothing in the facts stated which would preclude her recovery were she not the wife of L. P. Smith. In transactions between them, her conduct is to be considered in the light of the general rules which control the actions of persons occupying confidential relations with each other, but that does not mean, as the defendant below requested to be charged, that the relationship of husband and wife is such as to afford every facility for fraud. Here suspicion that she committed a fraud is not sufficient. If she is innocent of wrongdoing, the fraud her husband may be guilty of would be directed against her instead of against the company, were it to prevail in this law suit. She does not appear to have been guilty of laches, while the company was. It should have required a surrender and cancellation of the notes, when they were paid. It is not sufficient to excuse this neglect to say that L. P. Smith was the president of the company and its trusted officer. The affairs of the company were in the hands of a committee of bankers under an agreement which provided that creditors should surrender and cancel their notes, claims and demands, at the time they were satisfied. Had the committee attended to this duty, no law suit would have arisen over the payment of these notes. We are inclined to let the consequences of this negligence rest upon those who were guilty of it.

Judgment affirmed.